

1  David Parisi (Cal. Bar. No. 162248)
   Parisi & Havens LLP
2  15233 Valleyheart Drive
   Sherman Oaks, California 91403
3  Telephone: (818) 990-1299
   *dparisi@parisihavens.com*
4

5  Scott A. Kamber (pro hac vice pending)
   David A. Stampley (pro hac vice pending)
6  KamberEdelson, LLC
   11 Broadway, 22nd Floor.
7  New York, NY. 10004
   Telephone: (212) 920-3072
8  *skamber@kamberedelson.com*
   *dstampley@kamberedelson.com*
9

10 Joseph H. Malley (pro hac vice pending)
   Law Office of Joseph H. Malley
11 1045 North Zang Blvd
   Dallas, TX 75208
12 Telephone: (214) 943-6100
   *malleylaw@gmail.com*
13

14 *Attorneys for Plaintiffs*

15          IN THE UNITED STATES DISTRICT COURT
16      FOR THE NORTHERN DISTRICT OF CALIFORNIA
          SAN FRANCISCO DIVISION

       CV 09      3697

17 MIRIAM SLATER and SARA GOLDEN,        Case No.
   individually and on behalf of a class of
18 similarly situated individuals,       JURY DEMAND

19                                        COMPLAINT FOR:
                         Plaintiffs,
20                                        1. Stored Communications Act,
       v.                                    18 U.S.C. § 2701;
21
                                          2. Computer Fraud and Abuse Act,
22 TAGGED, INC., a Delaware Corporation;     18 U.S.C. § 1030;
   GREG TSENG; JOHANN SCHLEIER-
23 SMITH; and DOES 1 through 50,          3. California Computer Crime Law,
                                             Penal Code § 502;
24                       Defendants.
                                          4. California Unfair Competition Law,
25                                           Business and Professions Code § 17200;

26                                        5. California Consumer Legal Remedies Act,
                                             Civil Code § 1750
27
                                          6. Unjust Enrichment

ORIGINAL

VIA FAX

EMC

**CLASS ACTION COMPLAINT**

Plaintiffs, by their attorneys, upon personal knowledge as to themselves and their own acts and upon information and belief as to all other matters, allege as follows:

## I. NATURE OF THE ACTION

1. This is a class action lawsuit brought by Plaintiffs Miriam Slater and Sara Golden ("Plaintiffs") on behalf of themselves and similarly situated consumers ("Class Members") whose electronic mail services, communications, and email address books were accessed without authorization and misused by Defendants Tagged, Inc., owner and operator of Tagged.com, a social-networking website headquartered in San Francisco, California; its owners, Greg Tseng and Johann Schleier-Smith; and Does 1 through 50 (collectively, "Defendant" or "Tagged").

2. Defendant, in executing a massive email solicitation campaign to register new members, failed to disclose to consumers that it was using its members' email address books to propagate yet more solicitation messages and harvest yet more email addresses. Further, Defendant disguised its solicitation messages to appear as if they were personal communications from the consumers whose email contacts it had pilfered, and Defendant's messages included false statements that the senders were seeking to contact or share photographs with the recipients.

3. Defendant's viral email campaign violated California and federal statutes and employed the same deceptive tactics Defendants Tseng and Schleier-Smith are explicitly barred from using, according to the terms of a consent decree in the matter of *United States v. JumpStart Technologies*, Civ. Action No. C-06-2079 (March 23, 2006, N.D. Cal.) (Patel, J.).

## II. PARTIES

4. Plaintiff Miriam Slater is a resident of Santa Barbara County, California.

5. Plaintiff Sara Golden is a resident of Los Angeles County, California.

6.    Defendant Tagged, Inc. is a privately held Delaware corporation headquartered at 840 Battery Street, 2nd Floor, San Francisco, California 94111. Tagged does business throughout the State of California and the United States.

7.    Plaintiffs are currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued herein under the fictitious names Does 1 through 50, inclusive, and therefore, sue such defendants by such fictitious names. Plaintiffs will seek leave to amend this complaint to allege the true names and capacities of said fictitiously named defendants when their true names and capacities have been ascertained. Plaintiffs are informed and believe and based thereon allege that each of the fictitiously named Doe defendants is legally responsible in some manner for the events and occurrences alleged herein, and for the damages suffered by Plaintiffs.

8.    Defendant Greg Tseng is an individual who does business throughout the United States and, in particular, the State of California and this County. Tseng is Co-Founder and Chief Executive Officer of Tagged, Inc.

9.    Defendant Johann Schleier-Smith is an individual who does business throughout the United States and, in particular, the State of California and this County. Schleier-Smith is Co-Founder and Chief Technology Officer of Tagged, Inc.

10.    Defendants, Does 1-50, are entities associated with Tagged, Inc., possibly with contractual obligations with Tagged, Inc. that may require Tagged to provide notice to the Does of this matter so as to appear and represent their interests. When the identities of any Does who are sued as Does are identified, Plaintiffs will amend their complaint to name such parties.

### III.  JURISDICTION AND VENUE

11.    This Court has jurisdiction over the subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331.

12.    This Court has jurisdiction over defendant Tagged because Tagged is a corporation headquartered in San Francisco County, California.

1    13.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Tagged is a

2    corporation headquartered in San Francisco County, California, and/or because the improper

3    conduct alleged in this Complaint occurred in, was directed from, and/or emanated from this

4    judicial district.

5                        **IV.  INTRADISTRICT ASSIGNMENT**

6    14.    Pursuant to Local Rule 3-5(b) and 3-2(c), this action should be assigned to the

7    San Francisco Division of the Northern District of California because Defendant resides in San

8    Francisco.

9                          **V.  FACTUAL BACKGROUND**

10   **A.    Tagged.com: the Company**

11   15.    Tagged, Inc. is a privately owned corporation, headquartered in California, that

12   operates an online social-networking website at *www.tagged.com*. According to Tagged, "Mem-

13   bers use Tagged to keep in touch with friends and to make new ones." Tagged claims to be the

14   United States' third largest web-based social network with a worldwide membership of over 80

15   million users, 15 million of whom have signed in within the last 30 days.

16   *http://www.tagged.com/about/* and *http://www.tagged.com/about/press/facts.html*, accessed

17   August 10, 2009.

18   16.    Tagged generates revenue from advertising networks, brand advertising, mem-

19   ber subscriptions, and micropayments, and is backed by $8.5 million in investor funding.

20   *http://www.tagged.com/about/press/facts.html*, accessed August 10, 2009.

21   17.    In the course of conducting its business, Defendant initiates commercial email

22   messages to consumers, the primary purposes of which are to display commercial advertise-

23   ments, solicit consumers to register as members of Tagged.com, and harvest these consumers'

24   email address books to contact other potential new members.

25   18.    Beginning in or about April 2009, Tagged harvested millions of email addresses

26   from the email address books of consumers who visited Tagged.com, including Plaintiffs. Then,

27   using these consumers' email account credentials, Tagged sent unsolicited advertisements to the

1   harvested email addresses, making the messages appear as if they were invitations to join

2   Tagged sent by persons known to the recipients.

3   **B.    Tagged.com's Deceptive Email Campaigns**

4          19.    On or around June 6, 2009 Plaintiff Miriam Slater received an email from

5   Tagged.com that appeared to have been sent by a friend. The email stated that it was sent by an

6   acquaintance wanting to share pictures, through Tagged, with Plaintiff Slater.

7          20.    In order to see the promised pictures, Ms. Slater responded by visiting

8   Tagged.com, with no intention of becoming a Tagged member. Plaintiff Slater would not have

9   opened the email or visited Tagged.com if not for the fact that she believed the sender was

10  someone she knew. In navigating through Tagged.com to locate the pictures, Ms. Slater pro-

11  vided information that she believed was for the purpose of viewing the promised photos, which

12  did not exist. Instead, Tagged treated Ms. Slater as a new member.

13         21.    Similarly, Ms. Golden also became a Tagged member after having received an

14  invitation that appeared to have been sent by Ms. Slater, but which had been sent by Tagged,

15  without Ms. Slater's authorization or knowledge.

16         22.    Email messages sent by Tagged, such as those Plaintiffs Slater and Golden re-

17  ceived, utilized false header information. In each message, the "from" line displayed a mem-

18  ber's actual name and, in some cases, the member's email address—not Tagged's name or

19  email address. These messages did not readily reference Tagged. In the case of Plaintiff Slater,

20  Tagged even falsely signed the emails on behalf of the Slater as the purported sender. Conse-

21  quently, the email appeared to have been transmitted directly from the consumer to the recipi-

22  ents of the emails.

23         23.    Further, the "subject" lines of Tagged's emails did not expressly invite recipients

24  to join Tagged.com and did not indicate that the content of the emails was commercial in na-

25  ture. Rather, even the subject lines were designed to deceive the recipients into believing that

26  the emails had been sent by the persons identified as senders.

27

24.     By sending the deceptive emails to the contacts in its members' email address books, Defendant induced yet more consumers to join Tagged to make the promised personal connection, and Tagged gained access to new address books to continue to perpetrate its fraudulent email campaign.

25.     Furthermore, although the invitations emails originated from Tagged.com's servers, the "From" and "Reply-To" fields displayed the email address of the members whose email address book had been harvested to obtain the recipient's contact information.

26.     Tagged's emails were deceptive in that they contained false states that the purported sender was specifically attempting to contact and/or share photographs with the recipient. The emails contained messages such as, "[Your Friend] sent you photos on Tagged / Want to see the photos?" followed by two hyperlinked buttons marked "Yes" and "No."

27.     Tagged's emails were deceptive in that they falsely stated that recipients were required to respond, in that Tagged included statements such as , "Click Yes if you want to see the photos, otherwise click No. But you have to click!"

28.     Tagged's emails were deceptive in that they falsely indicated that the purported sender was expecting, and would be notified of, the recipient's response, with statements such as, "Please respond or [Your Friend] may think you said no :(" or something substantially similar.

29.     These emails were also deceptive in that, whether the recipient responded by clicking "Yes" or "No" hyperlinks contained in a message, either action led the recipient to a sign-up page for Tagged.

30.     Tagged's email messages described above were misleading and/or incorrect and caused injury to Plaintiff and the Class.

**C.     Tagged.com's Deceptive Registration Process**

31.     When a person visited Tagged.com, Tagged required the visitor to register first name, last name, email address, gender, and date of birth. Further, with deceptive statements Tagged induced the visitor to provide Tagged with access to the visitor's address book with

statements such as "Enter your GMail account name and password so we can match you up with your friend." With this deception, Tagged was repeatedly able to acquire new addresses to use in its ongoing email campaign process. In this regard, the process was in the nature of a computer virus whereby each infected computer (or user, in this case) necessarily, unknowingly and accidently infects many other computers (or users).

32.     Tagged did not disclose that the process of responding to its solicitation email constituted registration as a Tagged member, nor did Tagged disclosed that it would harvest the visitor's email addresses for use in solicitations disguised as messages from acquaintances containing untrue and misleading information about acquaintances seeking contact.

33.     Instead, Tagged's Privacy Policy and Terms of Service state as follows:

> The Add Friends feature is an easy way for Tagged users to invite friends through email. The email address(es) that you supply to use this service will only be used to send invitations to connect with you on Tagged.

Section D, "Privacy," *http://www.tagged.com/terms_of_service.html*, accessed August 10, 2009.

> MEMBERS CONSENT TO RECEIVE COMMERCIAL E-MAIL MESSAGES FROM TAGGED, AND ACKNOWLEDGE AND AGREE THAT THEIR EMAIL ADDRESSES AND OTHER PERSONAL INFORMATION MAY BE USED BY TAGGED FOR THE PURPOSE OF INITIATING COMMERCIAL E-MAIL MESSAGES.

Section E, "Notice Regarding Commercial Email," *http://www.tagged.com/terms_of_service.-html*, accessed August 10, 2009.

34.     Nowhere did Tagged disclose the unreasonable and unexpected result that, as a consequence of a visitor's interacting with Tagged.com to make contact with an acquaintance or view a friend's photographs, the visitor would be subscribed to Tagged and commercial email messages would be sent to the contacts in the visitor's email address book.

1    35.   Nowhere did Tagged disclose the unreasonable and unexpected result that, as a
2    consequence of interacting with Tagged.com, commercial email messages disguised as personal
3    messages from the registrant would be sent to every individual in the registrant's email address
4    book.

5    36.   In addition to Tagged's failures to provide adequate notice of its processes on
6    Tagged.com, Defendant induces consumers' participation by employing non-standard, incon-
7    spicuous notices when offering users the choice to skip providing information.

8    37.   Tagged's CEO, Greg Tseng, admitted that Tagged failed to provide adequate no-
9    tice to users that, by registering on Tagged.com, Tagged would send email advertisements to
10   every contact in their personal address books. Tseng stated: "Simply put, it was too easy for
11   people to quickly go through the registration process and unintentionally invite all their con-
12   tacts." "A Message from Tagged CEO Greg Tseng," Greg Tseng, CEO, Tagged, Inc., June 16,
13   2009, *http://blog.tagged.com/?p=4*, accessed on July 14, 2009.

14   38.   Tagged did not notify visitors that it would use their email provider services and
15   email address book to send messages to the contacts in the visitors' email address books.

16   39.   Tagged did not notify visitors that it would send messages with untrue informa-
17   tion, in their names, such as messages representing that the users were seeking contact with the
18   recipients and/or had photographs to share with recipients.

19   40.   Tagged's email messages described above were misleading and/or incorrect and
20   caused injury to Plaintiff and the Class.

21   **D.   Prior Court Order Prohibiting Defendants Tseng and Schleier-Smith's Email and**
22   **Web-Based Deceptions**

23   41.   The history of Tagged's executive team shows that Tagged knowingly and inten-
     tionally sent email messages and subjected consumers to registration procedures that were de-
24   ceptive and misleading in the appearance and content.
25   42.   On March 22, 2006, JumpStart Technologies, LLC entered into a consent decree
26   in *United States v. JumpStart Technologies*, Civ. Action No. C-06-2079 (N.D. Cal.) (Patel, J.)
27

1  (Dkt. No. 4), FTC File No. 042-3176. The consent decree was executed on JumpStart Tech-

2  nologies' behalf by its CEO, Defendant Tseng, who swore, in an affidavit filed on April 28,

3  2006, that he had provides copies of the consent decree to JumpStart's owners, members, prin-

4  cipals, members, officers, and directors, specifically including JumpStart owner Johann Schlei-

5  er-Smith. *Id.* (Dkt. No. 5).

6  43.   According to the allegations of the FTC complaint, JumpStart operated advertis-

7  ing promotion websites such as *FreeFlixTix.com*. Through FreeFlixTix, Jumpstart allegedly of-

8  fered to send free movie tickets to consumers who provided the email addresses of five friends.

9  JumpStart then targeted the friends' email addresses with promotional messages that appeared

10  to have been sent and signed by the consumers who provided the email addresses. The Federal

11  Trade Commission referred the matter to the U.S. Department of Justice for enforcement of the

12  FTC Act and the CAN-SPAM Act, 15 U.S.C. §§ 7704-05. *http://www.ftc.gov/os/caselist/-*

13  *0423176/0423176JumpstartTechnologiesConsentDecree.pdf,* accessed Aug. 10, 2009.

14  44.   In addition to imposing a $900,000 civil penalty, *id.* at 7 (Dkt. No. 4), the con-

15  sent decree permanently prohibited Defendants Tseng and Schleier-Smith—personally or

16  through any corporation—from promoting any commercial product or service by sending com-

17  mercial emails that contain false or misleading header or "from" information; contain deceptive

18  subject headings; or that fail to clearly and conspicuously indicate that the message is an adver-

19  tisement or solicitation. *Id.* at 4-5. Defendants Tseng and Schleier-Smith were also enjoined

20  from "misrepresenting, in any manner, expressly or by implication" the "source or content of

21  any email message" regarding products or services; or the "terms and conditions relating to

22  such product or service." *Id.* at 6-7.

23  45.   Defendant's knowledge and intent is further demonstrated by the fact that, as or

24  shortly after Defendants Tseng and Schleier-Smith were entering into the above-referenced

25  consent decree, Tagged, with Tseng and Schleier-Smith at the helm, began operating with a

26  business model substantially similar to Jumpstart Technologies'. As set forth in the factual alle-

27  gations of this complaint, their familiar business model included distribution to consumers of

commercial email messages that contain false and misleading header or "from" information and deceptive subject headings; that fail to disclose the advertising and commercial nature of the message; that misrepresent the emails' source; and that misrepresent terms and conditions of Tagged's services.

**E.      Other Relevant Characteristics of Plaintiffs, Putative Class Members, and Tagged**

46.     Plaintiffs and Class Members own or have custody and control of computers, computer systems, computer networks, computer programs and personal and proprietary data, including email services and email address books accessed, copied, utilized, and disrupted by Defendant without and in a manner exceeding Plaintiffs' and the Class Members' permission and authority.

47.     Plaintiffs' and Class Members own computers and the computers utilized by Plaintiffs and Class Members to store their email communications are computers used in or affecting interstate or foreign commerce or communication.

48.     Plaintiffs' and Class Members email communications were and are stored through facilities providing electronic communications services, and Defendant's conduct in accessing such facilities and Plaintiffs' and Class Members' email communications, including their email address books, and including for the purposes of sending solicitations and deceptive solicitations to other consumers, was not authorized.

49.     Plaintiffs' and Class Members' email address books were, themselves, and contained, communications or portions of communications, constituted from the messages sent and received by Plaintiffs and Class Members.

50.     Defendant's activities alleged above constituted a knowing and intentional scheme to defraud Plaintiffs and the Class Members, and to wrongfully control or obtain Plaintiffs' and Class Members property and data, including the use of their email services and related data, both of which are assets of value.

51.     In the course of committing the acts described above, Defendant intentionally accessed, without authorization, facilities through which electronic communication services are

1  provided, including Plaintiffs' and Class Members' email services, including services provided
2  by GMail, Yahoo Mail, and other email service providers.

3      52.    In so doing, Defendant intentionally exceed access authorization, obtaining and
4  altering proprietary data, including Plaintiffs' and Class Members' email services and address
5  books.

6      53.    Harms and damages to Plaintiffs and the Class Members during the period set
7  forth in the factual allegations herein and continuing to the present include the costs of lost per-
8  sonal and business time investigating and rectifying the consequences of Defendant's conduct
9  in harvesting Plaintiffs' and Class Members' email communications, including their email ad-
10  dress books, and in transmitting messages with false origin and content information, including
11  in the names and email addresses of Plaintiffs and the Class Members, which messages were
12  transmitted to Plaintiffs' and Class Members' address book contacts, such that economic dam-
13  ages to Plaintiffs and the Class Members exceed $5,000 in the aggregate.

14      54.    Further, through its practices, Tagged has been able to raise its profile as a web-
15  site with many supposed members and high levels of member traffic, enabling Tagged to attract
16  advertisers, increase its advertising revenue, and secure investment funding, and thereby profit
17  from its conduct described herein.

18                              **VI. CLASS ALLEGATIONS**

19      55.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(2) and 23(b)(3) on
20  behalf of themselves and the following class:

21              All individuals or entities in the United States who, from April 1, 2009 to
22              June 30, 2009, provided registration information on Tagged, Inc.'s web-
23              site after receiving an email sent by Tagged, Inc. that purported to be sent
24              by a friend or acquaintance, and had their online address books misap-
25              propriated by Tagged, Inc. for the purpose of sending false and unauthor-
26              ized Tagged.com invitation emails that falsely purported to be from the
27              individuals to persons in those individuals' email address books. Ex-

cluded from the Class are Defendant, its legal representatives, assigns, and successors, and any entity in which Defendant has a controlling interest. Also excluded is the judge to whom this case is assigned and the judge's immediate family.

56.  Plaintiffs reserve the right to revise these definitions of the classes based on facts they learn as litigation progresses.

57.  The Class consists of thousands, if not millions, of individuals and other entities, making joinder impractical.

58.  The claims of Plaintiffs are typical of the claims of all other Class Members

59.  Plaintiffs will fairly and adequately represent the interests of the other Class Members. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class Members, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the other Class Members.

60.  Absent a class action, most Class Members would find the cost of litigating their claims to be prohibitive and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication.

61.  Tagged, Inc. has acted and failed to act on grounds generally applicable to Plaintiffs and the other Class Members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members.

62.  The factual and legal bases of Tagged's liability to Plaintiffs and to the other Class Members are the same, resulting in injury to Plaintiffs and all of the other Class Members. Plaintiffs and the other Class Members have all suffered harm and damages as a result of Tagged's wrongful conduct.

63.   There are many questions of law and fact common to Plaintiffs and the Class Members, and those questions predominate over any questions that may affect individual Class Members. Common questions for the Class include, but are not limited to the following:

    a.   whether Tagged's conduct described herein violates the Stored Communications Act, 18 U.S.C. § 2701;

    b.   whether Tagged's conduct described herein violates the Computer Fraud and Abuse Act, 18 U.S.C. § 1030;

    c.   whether Tagged's conduct described herein violates California Computer Crime Law, Cal. Penal Code § 502;

    d.   whether Tagged's conduct described herein violates California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200;

    e.   whether Tagged's conduct has resulted in its unjust enrichment.

64.   The questions of law and fact common to Class Members predominate over any questions affecting only individual members and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

## COUNT I

**Violations of the U.S. Stored Communications Act ("SCA"), 18 U.S.C. § 2701, *et. seq.***

65.   Plaintiffs incorporate by reference the foregoing allegations.

66.   In violation of the Stored Communications Act, 18 U.S.C. § 2701, *et. seq.*, Defendant intentionally accessed, without authorization, facilities through which electronic communications services were provided in that Defendant accessed Class Members' email services, accounts, and address books, where such services and communications were restricted to access by Class Members through the use of their passwords, which Defendant obtained from Class Members through deception.

67.   Further, to the extent Defendant accessed such email accounts and account resources with limited authority granted by Class Members, Defendant exceeded such limited authority in that Defendant was not authorized by Class Members to transmit messages that false-

ly purported to have been sent by Class Members, that contained deceptive and misleading information purportedly from Class Members, that concealed Tagged's identity as sender and purpose in sending, and that deceptively instructed recipients to take certain actions for the benefit of Tagged and to the detriment of the recipients.

68.     Accordingly, Plaintiffs and Class Members are entitled to such equitable relief, civil damages, and punitive damages, and costs, and attorneys fees, as authorized under 18 U.S.C. § 2707.

## COUNT II

**Violations of the U.S. Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et. seq.***

69.     Plaintiffs incorporate by reference the foregoing allegations.

70.     Defendant violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et. seq.*, in that defendant knowingly accessed and, without permission, used, copied, and made use of data, computers, computer systems, and computer networks in order to devise and execute schemes and artifices to defraud, deceive, or extort, and to wrongfully control or obtain money, property, or data, in Defendant's deceptive email messages and Tagged.com web pages, which Defendant deployed to gain access to and use of Class Members' email accounts and services and the data, computers, computer systems, and networks associated with and utilized by such services and by Class Members subscribing to such services.

71.     Further, through such actions, Defendant knowingly and without permission used computer services, specifically, the email services to which Class Members subscribed and Class Members' email communications associated with such services.

72.     Harms and damages to Plaintiffs and the Class Members during the period set forth in the factual allegations herein and continuing to the present include the costs of lost personal and business time investigating and rectifying the consequences of Defendant's conduct in harvesting Plaintiffs' and Class Members' email communications, including their email address books, and in transmitting messages with false origin and content information, including in the names and email addresses of Plaintiffs and the Class Members, which

messages were transmitted to Plaintiffs' and Class Members' address book contacts, such that economic damages to Plaintiffs and the Class Members exceed $5,000 in the aggregate.

73.     Plaintiffs and the Class Members are therefore entitled to compensatory damages and injunctive relief under 18 U.S.C. § 1030, *et seq.*

## COUNT III

**Violations of Cal. Penal Code § 502, the California Computer Crime Law ("CCCL")**

74.     Plaintiffs incorporate by reference the foregoing allegations.

75.     Tagged violated Cal. Penal Code § 502(c)(2) by knowingly and without permission accessing, taking, and using Plaintiffs' and the Class Members email services and email address books.

76.     Defendant accessed, copied, used, made use of, interfered with, and/or altered, data belonging to Class Members: (1) in and from the State of California; (2) in the home states of the Plaintiffs and the Class Members; and (3) in the states in which the servers that provided email services and communication links between Plaintiffs and Class Members and the websites with which they interacted were located.

77.     Cal. Penal Code § 502(j) states: "For purposes of bringing a civil or a criminal action under this section, a person who causes, by any means, the access of a computer, computer system, or computer network in one jurisdiction from another jurisdiction is deemed to have personally accessed the computer, computer system, or computer network in each jurisdiction.

78.     Defendant has violated California Penal Code § 502(c)(1) by knowingly and without permission altering, accessing, and making use Plaintiffs' email address books and using the contact information in the address books in order to execute a scheme to defraud consumers into registering as Tagged members and to wrongfully obtain the data in Plaintiffs' and the Class Members' email address books.

79. Defendant has violated California Penal Code § 502(c)(6) by knowingly and without permission providing, or assisting in providing, a means of accessing Plaintiff's computers, computer system, and/or computer network.

80. Defendant has violated California Penal Code § 502(c)(7) by knowingly and without permission accessing, or causing to be accessed, Plaintiffs' computer system, and/or computer network, in particular, their email services and data.

81. Pursuant to California Penal Code § 502(b)(10) a "Computer contaminant" means any set of computer instructions that are designed to . . . record, or transmit information within a computer, computer system, or computer network without the intent or permission of the owner of the information.

82. Defendant has violated California Penal Code § 502(c)(8) by knowingly and without permission introducing a computer contaminant into the transactions between Plaintiffs and the Class Members and Defendant, specifically, Tagged.com web page interactions that propagate email address book harvesting software.

83. As a direct and proximate result of Defendant's unlawful conduct within the meaning of California Penal Code § 502, Defendant has caused loss to Plaintiffs and the Class Members in an amount to be proven at trial. Plaintiffs and the Class Members are also entitled to recover their reasonable attorneys' fees pursuant to California Penal Code § 502(e).

84. Plaintiffs and the Class Members seek compensatory damages, in an amount to be proven at trial, and injunctive or other equitable relief.

85. Plaintiffs and Class Members have suffered irreparable and incalculable harm and injuries from Defendant's violations. The harm will continue unless Defendant is enjoined from further violations of this section. Plaintiffs and Class Members have no adequate remedy at law.

86. Plaintiffs and the Class Members are entitled to punitive or exemplary damages pursuant to Cal. Penal Code § 502(e)(4) because Defendant's violation were willful and, on in-

1 │ formation and belief, Defendant is guilty of oppression, fraud, or malice as defined in Cal. Civil

2 │ Code § 3294

3 │     87.    Plaintiffs have also suffered irreparable injury from these unauthorized acts of

4 │ disclosure, to wit: all of their personal, private, and sensitive web communications have been

5 │ harvested, viewed, accessed, stored, and used by Defendant, and have not been destroyed, and

6 │ due to the continuing threat of such injury, have no adequate remedy at law, entitling Plaintiffs

7 │ to injunctive relief.

8 │ **COUNT IV**

9 │ **Violations of California's Unfair Competition Law ("UCL")**

10 │ **Cal. Business and Professions Code § 17200, *et seq.***

11 │     88.    Plaintiffs incorporate by reference the foregoing allegations.

12 │     89.    In violation of California Business and Professions Code § 17200 *et seq.*, De-

13 │ fendant's conduct in this regard is ongoing and includes, but is not limited to, statements made

14 │ by Defendant in its email messages regarding Defendant's possession of communications from

15 │ specific Tagged members from other specific Tagged members and Defendant's information

16 │ privacy and confidentiality practices.

17 │     90.    By engaging in the above-described acts and practices, Defendant has commit-

18 │ ted one or more acts of unfair competition within the meaning of the UCL and, as a result,

19 │ Plaintiffs and the Class have suffered injury-in-fact and have lost money and/or property—

20 │ specifically, personal information and/or registration fees.

21 │     91.    Defendant's business acts and practices are unlawful, in part, because they vio-

22 │ late California Business and Professions Code § 17500, *et seq.*, which prohibits false advertis-

23 │ ing, in that they were untrue and misleading statements relating to Defendant's performance of

24 │ services and with the intent to induce consumers to enter into obligations relating to such ser-

25 │ vices, and regarding which statements Defendant knew or which, and by the exercise of rea-

26 │ sonable care Defendant should have known, to be untrue and misleading. Defendant's business

27 │ acts and practices are also unlawful in that they violate the California Consumer Legal Reme-

1    dies Act, California Civil Code § 1750 *et seq.*, Penal Code § 502, 18 U.S.C. § 1030, *et. seq.*,

2    and 18 U.S.C. § 2701, *et. seq.* Defendant is therefore in violation of the "unlawful" prong of the

3    UCL.

4        92.     Defendant's business acts and practices are unfair because they cause harm and

5    injury in fact to Plaintiffs and Class Members and for which Defendant has no justification

6    other than to increase, beyond what Defendant would have otherwise realized, its profit in fees

7    from advertisers and its information assets through the acquisition of consumers' personal in-

8    formation. Defendant's conduct lacks reasonable and legitimate justification in that Defendant

9    has benefited from such conduct and practices while Plaintiffs and the Class members have

10    been misled as to the nature and integrity of Defendant's services and have, in fact, suffered

11    material disadvantage regarding their interests in the privacy and confidentiality of their per-

12    sonal information. Defendant's conduct offends public policy in California tethered to the Con-

13    sumer Legal Remedies Act, the state constitutional right of privacy, and California statutes rec-

14    ognizing the need for consumers to obtain material information that enables them to safeguard

15    their own privacy interests, including Cal. Civ. Code § 1798.80. In addition, Defendant's *modus*

16    *operandi* constitutes a sharp practice in two ways:  (i) Defendant know, or should know, that

17    consumers care about the status of personal information and email privacy but are unlikely to

18    be aware of the manner in which Defendant fails to fulfill its commitments to respect consum-

19    ers' privacy; and (ii) to the extent members do become aware of Defendant's conduct and prac-

20    tices, Defendant's business model is designed to generate high traffic volume to make up for

21    the loss of revenue from members disaffected by Defendant's misleading messages. Defendant

22    is therefore in violation of the "unfair" prong of the UCL.

23        93.     Defendant's acts and practices were fraudulent within the meaning of the UCL

24    because they are likely to mislead the members of the public to whom they were directed.

25        94.     Plaintiffs, on behalf of themselves and on behalf of each member of the Class,

26    seek individual restitution, injunctive relief, and other relief allowed under the UCL.

27

# COUNT V

## Violations of California's Consumer Legal Remedies Act ("CLRA")

### Cal. Civ. Code § 1750, *et seq.*

95.     Plaintiffs incorporate by reference the foregoing allegations.

96.     In violation of Civil Code § 1750, *et seq.* (the "CLRA"), Defendant has engaged and is engaging in unfair and deceptive acts and practices in the course of transactions with Plaintiffs, and such transactions are intended to and have resulted in the sales of services to consumers. Plaintiffs and the Class Members are "consumers" as that term is used in the CLRA because they sought or acquired Defendant's good or services for personal, family, or house-hold purposes. Defendant's past and ongoing acts and practices include but are not limited to:

> a.     Defendant's representations that its services have characteristics, uses, and benefits that they do not have, in violation of Civil Code § 1770(a)(5);

> b.     Defendant's representations that its services are of a particular standard, quality and grade but are of another standard quality and grade, in violation of Civil Codes § 1770(a)(7); and

> c.     Defendant's advertisement of services with the intent not to sell those services as advertised, in violation of Civil Code § 1770(a)(9).

97.     Defendant's violations of Civil Code § 1770 have caused damage to Plaintiffs and the other Class members and threaten additional injury if the violations continue. This damage includes the loss of the benefit of bargain of Defendant's services, transactions for which were premised, in part, on consumers' reasonable expectations of the material accuracy of Defendant's representations in e-mail messages purporting to convey other Tagged members' expressions of interest and Defendant's privacy representations.

98.     At this time, Plaintiffs seek only injunctive relief under this cause of action. Pursuant to Civil Code § 1782, in conjunction with the filing of this action, Plaintiffs will notify Defendant in writing of the particular violations of Civil Code § 1770 and demand that Defen-

1 | dant rectify the problems associated with its behavior detailed above, which acts and practices
2 | are in violation of Civil Code § 1770.

3 | 99. If Defendant fails to respond adequately to Plaintiffs' above-described demand
4 | within 30 days of Plaintiffs' notice, pursuant to Civil Code § 1782(b), Plaintiffs will amend the
5 | complaint to request damages and other relief, as permitted by Civil Code § 1780.

## COUNT VI

### Unjust Enrichment

8 | 100. Plaintiffs incorporate by reference the foregoing allegations.

9 | 101. Plaintiffs assert this claim against each and every Defendant named herein in
10 | this complaint on behalf of themselves and the Class.

11 | 102. A benefit has been conferred upon Defendant by Plaintiffs and the Class. On in-
12 | formation and belief, Defendant, directly or indirectly, has received and retained information
13 | regarding Class Members' email accounts and address books that is otherwise private, confi-
14 | dential, and not of public record, and/or has received revenue from the use and provision of
15 | such information.

16 | 103. Defendant appreciates or has knowledge of said benefit.

17 | 104. Under principles of equity and good conscience, Defendant should not be per-
18 | mitted to retain the information and/or revenue that it acquired by virtue of its unlawful con-
19 | duct. All funds, revenues, and benefits received by Defendant rightfully belong to Plaintiffs and
20 | the Class, which Defendant has unjustly received as a result of its actions.

## PRAYER FOR RELIEF

22 | WHEREFORE, Plaintiffs Slater and Golden, on behalf of themselves and the Class,
23 | pray for the following relief:

24 | a) With respect to all counts, declaring the action to be a proper class action and
25 | designating Plaintiffs and their counsel as representatives of the Class;

26 | b) As applicable to the Class *mutatis mutandis*, awarding injunctive and equitable
27 | relief including, *inter alia*: (i) prohibiting Defendant from engaging in the acts

alleged above; (ii) requiring Defendant to disgorge all of its ill-gotten gains to Plaintiffs and the other Class members, or to whomever the Court deems appropriate; (iii) requiring Defendant to delete all data surreptitiously or otherwise collected through the acts alleged above; (iv) requiring Defendant to provide Plaintiffs and the other Class Members a means to easily and permanently decline any participation in any data collection activities by means of Tagged or any similar online activity, in any present or future iteration of Tagged; (v) awarding Plaintiffs and Class Members full restitution of all benefits wrongfully acquired by Defendant by means of the wrongful conduct alleged herein; and (vi) ordering an accounting and constructive trust imposed on the data, funds, or other assets obtained by unlawful means as alleged above, to avoid dissipation, fraudulent transfers, and/or concealment of such assets by Defendant;

c) For a preliminary and permanent injunction restraining Defendant, its officers, agents, servants, employees, and attorneys, and those in active concert or participation with any of them from

(1) transmitting any information about Plaintiffs or Class Members' activities on the Internet for advertising purposes to any other websites or entities, without fair, clear and conspicuous notice of the intent to transmit information, including a full description of all information potentially and/or actually available for transmission;

(2) transmitting any information about Plaintiffs or Class Members' activities on the Internet for advertising purposes to any other websites or entities, without fair, clear and conspicuous opportunity to decline the transmittal prior to any transmission of data or information;

d) A permanent injunction enjoining and restraining Defendant, and all persons or entities acting in concert with them during the pendency of this action and thereafter perpetually, from:

    (1) initiating or procuring transmission of unsolicited commercial electronic messages on or through Class Members' computers, Class Members' email services and networks, or to Tagged users;

    (2) accessing or attempting to access Class Members' email services and networks, data, information, user information, profiles, computers and/or computer systems;

    (3) soliciting, requesting, or taking any action to induce Tagged.com visitors to provide identifying information, or representing that such solicitation, request, or action is being done with any Class Member's authorization or approval;

    (4) retaining any copies, electronic or otherwise, of any Class Members' information, including login information and/or passwords, obtained through illegitimate and/or unlawful actions;

    (5) engaging in any activity that alters, damages, deletes, destroys, disrupts, diminishes the quality of, interferes with the performance of, or impairs the functionality of Class Members' computers, computer systems, computer networks, data, websites, and email or other services;

    (6) engaging in any unlawful activities alleged in this complaint; and

    (7) entering or accessing any of the physical premises or facilities of Class Members or their counsel.

e) An order requiring Defendant to account for, hold in constructive trust, pay over to Class Members, and otherwise disgorge all profits derived by Defendant from its unlawful conduct and unjust enrichment, as permitted by law;

f) An award to Class Members of damages, including but not limited to, compen-
satory, statutory, exemplary, aggravated, and punitive damages, as permitted by
law and in such amounts to be proven at trial;

g) An award to Class Members of reasonable costs, including reasonable attor-
neys' fees;

h) For pre-and post-judgment interest as allowed by law; and

i) For such other relief as the Court may deem just and proper.

Respectfully submitted,

Dated: August 12, 2009                                    PARISI & HAVENS, LLP

By: _____
DAVID PARISI
One of the Attorneys for Plaintiffs, indi-
vidually and on behalf of Class of simi-
larly situated individuals

1                                       **JURY DEMAND**

2     Plaintiff requests trial by jury of all claims that can be so tried.

3                                   Respectfully submitted,
    Dated: August 12, 2009                     PARISI & HAVENS, LLP

4

5

                                 By:_____

6                                       DAVID PARISI

7                                     One of the Attorneys for Plaintiffs, indi-
                                    vidually and on behalf of Class of simi-

8                                     larly situated individuals

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27